SALTER, J.
(concurring).
It is our duty to affirm the Florida Unemployment Appeals Commission’s order denying benefits to Mr. Alvarez on the grounds that he voluntarily quit his job without good cause attributable to his former employer, Cingular Wireless. We affirm that order, but I write to provide the background and to underscore the need for claimants to obtain legal advice immediately when their former employers appeal the payment of benefits and seek a telephonic administrative hearing.
In this case, Mr. Alvarez filed a claim which was allowed by the Agency for Workforce Innovation. Mr. Alvarez worked for Cingular from 2007 through April 2009, and his unemployment compensation benefit was determined to be $244.00 per week. The initial notice of determination found that:
THE CLAIMANT IS CONSIDERED TO HAVE BEEN DISCHARGED WHEN THE EMPLOYER REQUESTED THE CLAIMANT’S RESIGNATION BECAUSE OF ALLEGED POOR PERFORMANCE. NO INFORMATION HAS BEEN SUBMITTED WHICH CLEARLY SUBSTANTIATES MISCONDUCT.
The notice of determination indicated that it had been mailed May 20, 2009. Under the applicable rules, an appeal by Cingular had to be “filed” by June 9, 2009. The record contains a letter dated June 8, 2009 from “Talx UC Express,” an “unemployment state consultant” in St. Louis, Missouri, but the Agency’s clerk’s stamp on the letter is June 15, 2009. No evidence of a postmark, faxed version, or online filing is in the record. Under the *653 Agency’s interpretation of “filed,” the employer’s appeal was subject to dismissal if the postmark was after June 9, 2009.
The Talx letter explained that Talx is an authorized agent empowered to act on behalf of Cingular and appealed the Agency’s determination awarding benefits to Mr. Alvarez. The Agency treated the letter as a timely appeal and scheduled a telephonic hearing. During the hearing, Mr. Alvarez’s supervisor testified:
Appeals Referee: And did [Mr. Alvarez] quit or was he discharged from his position?
Supervisor: No, he was not.
Appeals Referee: No, he was not what?
Supervisor: I understood that he was discharged from his position.
Appeals referee: I asked did he quit or was he discharged?
Supervisor: I am sorry, he quit.
The supervisor’s further testimony was primarily hearsay, but Mr. Alvarez, a non-attorney representing himself, did not object. At the conclusion of that first telephonic hearing, the Talx representative for the employer told the appeals referee, “if you have an issue on the credibility, we ask that the hearing, you know, be continued so that the area manager could testify that she didn’t fire him.”
The appeals referee did precisely that, noticing a second telephonic hearing so that Cingular could bring in two more witnesses. Thereafter the referee found that Mr. Alvarez voluntarily quit without good cause attributable to the employer. During the hearings, Mr. Alvarez testified on his own behalf but called no other witnesses and did not cross-examine any of the Cingular witnesses.
In his subsequent appeal to the Commission, treated as a request for review, the Commission found that the appeals referee’s findings were based on competent substantial evidence and affirmed them. Mr. Alvarez’s further appeal to this Court followed.
In the present appeal, Mr. Alvarez is represented by an attorney who has done his best to resuscitate the claim. Mr. Alvarez’s counsel has attempted to show through sworn declarations that Mr. Alvarez was unaware of his right to call other witnesses and that those witnesses would have substantiated his account of his alleged discharge. Mr. Alvarez’s brief is well prepared and makes persuasive arguments on his behalf.
The problem is that these measures come too late in the process to be availing. The employer’s appeal may have been late and subject to dismissal, but the record does not include the controlling postmark on the employer’s letter. Mr. Alvarez’s supervisor initially admitted that he was discharged, but then changed her testimony after a further prompt from the referee. Much of Cingular’s case was based on objectionable hearsay. Mr. Alvarez had no professional advocate (as Cingular did) to make a persuasive closing argument or to subpoena and cross-examine witnesses. And Mr. Alvarez’s declarations filed here are not “new evidence or information” that can be considered by the appeals referee, the Commission, or us. The information in those declarations was available when the telephonic hearings were conducted. See Reeves v. Fla. Unemployment Appeals Comm’n, 782 So.2d 525, 526 (Fla. 1st DCA 2001); Fla. Admin. Code R. 60BB-7.005. Until Mr. Alvarez obtained legal representation, the playing field was anything but level. The employer had a professional unemployment consultant[1] and witnesses readily available to testify in its behalf.
*654 Despite Mr. Alvarez’s persistence and the efforts of his counsel here, this Court and the Commission are constrained by the record. If Mr. Alvarez had been represented in the telephonic hearings, the outcome might have been different. The employer’s initial admission that Mr. Alvarez was “discharged,” timely objections to hearsay,[2] and the introduction of additional evidence might have carried the day.
Unemployment compensation benefits are a safety net in a time of high unemployment such as this. The importance of the benefits to a claimant (and often, his or her family) cannot be overstated. The purpose of this concurrence, then, is to encourage unemployment compensation law specialists, pro bono attorney volunteers, and non-profit legal services providers to make their availability and services well known to claimants and the Agency for Workforce Innovation so that claimants like Mr. Alvarez can get the help they need when it matters most, and not when it is too late. With this cautionary autopsy of the record, I concur in the opinion that the Commission’s order must be affirmed.

. The record is unclear whether the "unemployment state consultant” representing Cin- *654 guiar was an attorney, but the transcripts evidence great familiarity with the applicable law and procedure. Mr. Alvarez was at a substantial disadvantage.

. While Mr. Alvarez’s failure to object to hearsay would not preclude us from considering the sufficiency of competent evidence to support the referee’s findings, Yost v. Unemployment Appeals Comm’n, 848 So.2d 1235, 1238 (Fla. 2d DCA 2003), the employer’s then-struggling case was repaired when there was no opposition to its request for a continuance of the hearing to allow additional testimony. An attorney for Mr. Alvarez ordinarily would have (among other things) objected to the hearsay and to the continuance of the hearing (based on the employer’s failure to have available its witnesses on the duly-noticed hearing date).